# Kerr *versus* Wright & Pier.

### *Proof required to establish Consentable Division Line.*

1. When a compromise line has been agreed upon it is binding on the parties, and those claiming under them ; but it is error to permit the jury to find that such a line has been established by the owners of adjoining lands, unless there is evidence in the cause from which such an agreement can fairly be inferred.

2. The fact that a surveyor who had once been employed by the owner of a tract of land to run one of his lines, was afterwards employed by the board of property to resurvey the whole tract, and in so doing had marked a line between it and the adjoining tract, is not sufficient evidence of the establishment of a consentable line to go to a jury.

3. Nor is it sufficient evidence for this purpose that one of the adjoining landowners, in his deed conveying it to another, described it by lines which included less than the original survey, when in the same deed it is designated as " all that tract," &c., named in the official survey. This general description controls the distances mentioned in the deed.

ERROR to the Common Pleas of *Jefferson county.*

[Kerr *v.* Wright & Pier.]

This was an action of ejectment brought in the court below by Reuben G. Wright and B. W. Pier against Mannas Kerr, to recover forty acres of land, more or less, in Heath township, Jefferson county.   The plea was, "not guilty."

The plaintiffs claimed under a deed from John Keatly and Emory Ink, whose title was derived from Abram Winsor, the vendee of Henry Shippen, deceased, who was the Commonwealth's grantee of tract No. 2369, containing nine hundred and sixty-two acres and forty-two perches.

The title of the defendant was derived through Abram Winsor from Wilhelm Wilink, the Commonwealth's grantee of the adjoining tract of land, No. 2649.   The annexed draft exhibits the location of their original tracts.   The dotted line across No. 2649 indicates the interference, and marks out the forty acres in dispute.

| Chestnut. | W. 480. | W. pine. | 30 | Post. | W. 477. | Maple. |
|---|---|---|---|---|---|---|
| S. 340. | No. 2369. H. SHIPPEN. 962 a. 42 p. | N. 340. | S. 320. | M | No. 2649. W. WILINK. ANAS KERR. | N. 320. |
| | WRIGHT & | PIER | | | 900 a. and allowance. | |
| R. oak. | E. 480. | Ch. oak. | 30 | Post. | E. 477. | Chestnut. |

Evidence of surveys made from time to time by the owners of these adjoining tracts, and by order of the Board of Property, were offered and received, for the purpose of showing where the true division line was, which, it was contended, had been fixed by the adjoining owners before the defendant purchased.

The court charged the jury that, in the absence of lines upon the ground, the courses and distances in the surveys must govern, in which case the oldest must be filled out first; and that, as the oldest survey was the one under which the defendant claimed, he would be entitled to their verdict.   But that if the division line was in doubt, and the adjoining owners had established a line (mentioned by Thompson, one of the surveyors) before the defendant purchased, it would govern in this case.

The jury found in favour of the plaintiff, and judgment having been entered on the verdict, the defendant sued out this writ, and assigned for error the instruction of the court in regard to the alleged compromise line, when there was no evidence whatever in the case that such a line had ever been established.

*B. F. Lucas*, for plaintiff in error, who was defendant below, argued that it was error to submit this fact to the jury under the evidence in the cause, and cited Urkett *v.* Coryell, 5 W. & S. 60; Switland *v.* Haloats, 8 W. 385; Hannay *v.* Stewart, 6 Watts 487, and Dubois *v.* Lord, 5 Watts 49.

*J. G. Gordon*, for defendant, cited and relied on McCoy *v.* Hutchinson, 8 W. & S. 66.

The testimony offered in support of this alleged consentable line is quoted and examined in the following opinion of the court, delivered October 25th 1860, by

WOODWARD, J.—The court submitted to the jury the question whether the adjoining owners of the two tracts numbered respectively 2369 and 2649, established a division line between these tracts by mutual consent, and the single question upon the record is, whether there was evidence to justify such a submission.

Both tracts seem to have been originally surveyed in 1794— 2369 on a warrant to Henry Shippen, and 2649 on a warrant to Wilhelm Wilink, and others; but the division line between them was not run. All the other lines were, apparently, well run and marked. It is the division line between the two tracts that is now in question, and it is to be determined by an accurate recalculation of both tracts, unless the parties litigant, or those under whom they claim, fixed it by consent; and, if they did, they should be held to it, whether it be the true line or not.

Under the assignment of error, it is the duty of the defendant in error to point out the evidence of a consentable line.

We are referred in the first place to the testimony of John J. Y. Thompson, who made several surveys of these tracts. The first in 1832, when he ran from the chestnut, the north-west corner of 2369, "till we measured the distance east, 477 perches, made a new line, a pine corner at the end of that line,—the north-east corner. This was new work. I then ran north, and determined the boundary of 2449." No owner of tract 2649 was present at this survey, or had any interest in it. The object of the surveyor was, to fix the location of a third tract, lying north of these two, and it was no part of his duty or purpose to fix the division line between these two tracts.

His next survey was in 1837, when he went on the ground at the instance of Judge Heath, the owner of 2649, and of the Portland Company, not to fix the division line between tracts 2369 and 2649, but between the latter and 2449, lying at the north. He took up the line he had run five years before as the northern line of 2369, and extended it to the eastern boundary of 2649, but could not find the maple corner called for. To

determine the position of that corner, he went to the north-eastern corner of 2449, which was well marked, and ran south from that the official distance, "and came out very close where the other line came out,—very satisfactory." It is apparent that this survey had nothing at all to do with the division line between the two tracts in question here. Judge Heath's purpose was to define the boundary between his land and lands lying north of him,—not between himself and land lying west of him.

In the same year, 1837, Thompson received an order of the Board of Property to resurvey the Shippen tract 2369. He began again at the north-west corner of this tract, a chestnut, and ran south to a red oak, the south-west corner, "then east, about 480 perches." Then he went back to the north-east corner, the pine he had marked in his first survey, and ran from that south, "and made the corner where the two lines crossed."

This was the first time this line south from the pine was ever run. It is the line in dispute. Judge Heath was not present at, or assenting to this survey, and certainly neither he nor his alienees are to be concluded by it.

The next evidence of acquiescence in this line to which we are referred, is the deed of Judge Heath to Brooks & Morris in 1848, conveying to them his tract 2649. The tract is a parallelogram, its longest lines running east and west, its shortest north and south. The official distances of the long lines are 477 perches; but in the deed they are described as 447 perches—difference 30 perches. As this is exactly the width of the interference in dispute, it is supposed this deed is evidence that Judge Heath and his grantees recognised the division line as the plaintiffs claim it, and gave up part of their official distance from deference to that line. This would be a very satisfactory view of the matter if the deed contained nothing else quite as pertinent to the point in issue, and yet decisive against the plaintiff's argument. It is a grant of " all that tract or parcel of land situated in Heath township, Jefferson county, surveyed upon a warrant granted to Wilhelm Wilink and others, and numbered 2649, containing nine hundred acres and allowance, beginning at a chestnut, the south-east corner and south-west corner of 2770, thence west 447 perches to tract No. 2369, thence north 320 perches to a post," and so on.

Now this is a grant of the whole tract originally surveyed on the Wilink warrant, and it is of no moment that the side lines are 30 perches short of the official distance, since the deed calls for the Shippen tract 2369 as an adjoiner on the west. And let it be observed also that the last line quoted above runs, not to the pine corner made by Thompson in 1832, but to a post;

[Kerr *v.* Wright & Pier.]

which means the true corner between these tracts, as it may be found on an accurate location of both tracts. So far from the deed proving a consentable line, it is written evidence that the parties meant to sell and buy by the official lines; it is evidence also, that in 1848 they did not recognise Thompson's pine as a corner of the two tracts.

We next have the testimony of James George, who swore that Mannas Kerr showed him the line on the north side, and what he said was his corner on the north-west. Kerr said that was his corner and his line—it was a pine stump.

The line sought to be established in this suit is the west end line of the tract, and I cannot see that this evidence touches that subject. The pine stump spoken of by this witness is, doubtless, the corner which Thompson established in 1832, as a boundary between this tract and tract 2449. Kerr might well claim it as such, for it was made for that purpose and no other, but that it was a boundary between him and 2369 was not admitted to the witness, and could not have been, for it was not made for that purpose, and as yet we have seen no recognition of it as a boundary between these two tracts.

Finally, we have the testimony of Abram Winsor, under whom both parties claim. He pointed out to Kerr, before he bought, some lines and a corner, *but did not trace the line running south from the pine corner.* That is the very line in question, and how can this evidence be accounted a consent to that line?

When this witness made his written contract with the Kerrs, he described the land as bounded on the north by lot No. 2649, on the east by lot No. 2770, and *on the west by lot No.* 2369, and as being land surveyed on a warrant No. 2649 to Wilhelm Wilink. Here was another recognition of the official lines as in Heath's deed—nothing said about the pine corner or the line running south therefrom.

Thus then stands the evidence on which the plaintiff relied: a recognition of the pine corner as and for that for which it was made —a boundary between the Wilhelm tract and a northern adjoiner —but no recognition of it as a boundary between the Wilink tract and its western adjoiner in the name of Shippen. On the other hand, the written documents relating to these two last-mentioned tracts take no notice of the pine corner, but refer themselves exclusively to the official surveys.

No agreed line as contradistinguished from the official line was ever established on such evidence. After a careful consideration of all that is on our paper-books, we are obliged to say that we do not see a particle of evidence of a consentable line between Wilink and Shippen. It is not strange that in the hurry of trial the learned judge should have mistaken the application of

the evidence concerning the pine corner, and that it was misapplied is so clear that the case must go back.

The judgment is reversed, and a *venire facias de novo* is awarded.